Good afternoon. This is the case of Sheva Vickers-Duncan v. Dennis Tactikos, 4-13-1064. Appearing for the appellant is Attorney Dawn Wall. And attorney for the appellee is John Schwulst. Did I say that right? Good. All right, Ms. Wall, you may proceed. May it please the court, counsel, my name is Dawn Wall and I represent Sheva Vickers-Duncan. And this is a case that is here before your honors, essentially at the pleading stage. Ms. Vickers-Duncan had filed a two-count complaint at the circuit court. The first count asserting defamation per se. The second count asserting false light invasion of privacy. As a consequence, the defendant in response to that complaint filed a 2-6-19 and a 2-6-15 combined motion to dismiss. Essentially, when Judge Little considered the case, his concern was whether or not Ms. Vickers-Duncan was acting as a public official in her capacity as an assistant state's attorney for McLean County when she interacted with the defendant. I argued before Judge Little that in this particular instance, the factual dynamic of the relationship between Dennis Tacticos, who was not a litigant in the case, and the assistant state's attorney, Sheila Vickers-Duncan, was different than you typically would have where someone would come in and directly interact with the state's attorney. I asserted to Judge Little that in this particular case, based on the manner in which the complaint and the facts in the complaint were alleged, Mr. Tacticos did not get to take advantage of the fact of asserting that Ms. Vickers-Duncan was a public official. The defendant argued that in particular, the statutory provision cited in the decision of people versus states, where there was a criminal consideration of an assistant attorney general acting as a public official for purposes of an individual being charged criminally with violating a statute of inappropriate or threatening conduct to a public official. The defendant in this case argued that that criminal statutory provision made it a requirement that Judge Little find that Sheila Vickers-Duncan was a public official. I would assert, based upon the findings in the New York Times Solving Case, that it is not clear here that Ms. Vickers-Duncan was a public official. She worked for the state's attorney, Yoder. She appeared in a traffic proceeding where the litigant in that traffic proceeding was actually the 17-year-old son of the defendant in this case. Dennis Tacticos never had interaction with Sheila Vickers-Duncan. Why does that matter in deciding whether or not a person is a public official? I think it matters because the case in New York Times versus Sullivan says we need to examine and evaluate whether the person interacting with this individual had the belief that this public official was charged with carrying out very specific governmental duties. And the New York Times Sullivan case, factually, is not the same as the case here. But I think it does, in the dicta... You mean it matters if it were the letter from the son, that would have made her a public official? But if it's a letter from the father, she's not? I think that certainly the capacity in which those two people were exchanging dialogue does make a difference in this particular case. In terms of the critical inquiry, the position being occupied, and the duties being performed, no matter who is the person who speaks of it? Well, I think those duties are of significant consideration. But in this particular case, when you evaluate what Ms. Vickers-Duncan was doing with respect to the tasks of her job, that changes. I'm not sure I understand. What do you mean when you evaluate what she was doing? Well, she was essentially carrying out the policy set by the State's Attorney's Office. And I think in a ministerial fashion, she was carrying out various tasks assigned to her. You mean Assistant State's Attorneys are acting in ministerial capacities? Well, I think to some extent they are not delegating policy, unlike a police officer who has the discretion, and in the Kersey case was indicated that they have the discretion to stop people, to investigate particular things, to make determinations about how they're going to spend their nine hours interacting with the public. And then they have discretion in terms of making an arrest, or giving a citation, or giving a warning. And to that extent, I think... Prosecutors don't? Well, in this particular case, I think Ms. Vickers-Duncan did... In this particular case, you keep referring to it. I'm talking about the position of being Assistant State's Attorney. They don't have as much discretion and judgment to be applied in the operation of their job as police officers? I think they don't. I think in this particular... Is there any case that holds that prosecutors aren't public officials? I could not find a case, Your Honor, that says they are... You'd be the first to so conclude? I'm sorry? You're asking this court to be the first to so conclude? Well, no. I'm indicating to this court, I guess, that the determination of her as a public official, if you look at the dicta in the New York Times Sullivan case and apply that to this particular case, she isn't a public official. This case involves a letter to the editor that the defendant wrote? That's true. It was styled as a letter to the editor. But I would assert that the fact that it appears on an opinion page in the pantograph doesn't in and of itself make it opinion. It wasn't an editorial of the newspaper? No, it was not an editorial of the newspaper. But in the Moriarty case where the psychiatrist was being discussed in an article, in an editorial article, and the court in that particular case spent a lot of time deciphering and dissecting what is opinion versus what is defamatory. I think if we looked at the comments that were made by Mr. Tacticos with that same template that was filed in the Moriarty case, the fact that it appeared as a letter to the editor doesn't in and of itself say, okay, now this is only opinion. There may be argument for counsel to state that the bullying comment was the opinion of Dennis Tacticos. However, Mr. Tacticos in this particular case said, Sheila Vickers Duncan made an untruth to my son. Sheila Vickers Duncan told him that there were witnesses present when they were not. And I think Dennis Tacticos's failure to investigate or know the truthfulness of those statements makes it defamatory. Well, you didn't allege, however, that it was intentionally defamatory, did you? Well, I alleged in the complaint that he was not present, that he didn't have actual knowledge of the events that had occurred. And I would assert to your honors that under the New York Times Sullivan test, actual malice can be the reckless disregard of an individual to determine whether or not those facts are truthful. And in this instance, I do think that we pled sufficient facts. Well, but you didn't plead that claim that he acted with actual malice. Aren't those terms of art? Well, I did plead that claim to that extent in the false light invasion of privacy. And I essentially allege those same facts that his failure. I don't understand when you say you essentially allege the same facts. You're obviously familiar with the case law. It seems to me that if you're alleging defamation and someone is a public official, you have to allege actual malice. And I didn't use the term actual malice. Why not? Because I believed that that's conclusory. And so instead, I alleged the actual factual things that are deemed true at this stage of the proceeding, which is that Dennis Tacticos was not a litigant in the case, that Dennis Tacticos did not have personal knowledge of any of the events that occurred in January of 2011. And so to that extent, I argued to Judge Little that if you assume those facts to be true, that Mr. Tacticos was not in the courtroom, that Mr. Tacticos had no personal knowledge, and that he had no basis to know the truthfulness of what he put in the article, other than to believe that his 17-year-old son told him the truth. I believed, based on those factual allegations, taken in the light most favorable to the plaintiff, and taken in conjunction with the exhibit of the document. If your position is that an assistant state's attorney is not a public official, you don't have to plead actual malice. Right. So why would you try to plead it if that's your position? Well, I tried to argue it alternatively, that even if the circuit court was going to say that Sheila Vickers Duncan was a public official, that we had gone far enough in our factual allegations in count one. And then, of course, with respect to count two, false light invasion of privacy, her status, whether she was a public official or not a public official, didn't matter. Because with respect to trying to establish a false light invasion of privacy claim, I had to meet that threshold of actual malice as to her. And Judge Little gave me an opportunity to amend the pleading, but there essentially weren't any more facts that I could allege. Did you argue to him in the trial court that you pled sufficient facts to make it actual malice? Yes, I did. And I also argued that in the motion to reconsider that we had pled sufficient facts because of Mr. Tacticos' absence from this entire process and the fact that he relied upon his 17-year-old's recitation of what happened on that particular day. And then we even went so far after the defendant filed their motion, which sets forth specifically that he had other exchanges with the state's attorney, in fact, William Yoder, where William Yoder and Sheila Vickers Duncan both respond and say, essentially, despite what your son says, this is factually what I am stating has occurred. And in response to that, counsel for the defendant says, well, truth is always a defense to a defamation, but that accelerates the issues that were considered by Judge Little because that truth is a defense mechanism, in my assertion, would not come into play until the fact finder weighs out whether Sheila Vickers Duncan is telling the truth or whether Dennis Tacticos, who was an absent litigant, is telling the truth, or whether his son testifies to what in particular would have occurred. Ultimately, though, she dismissed the case because she didn't have a witness present. Isn't that true? Well, I think that supposition argued by the other side, but there's certainly no facts that establish the particulars of why, and I think there's an affirmative allegation by the defense that a police officer was there. Right, that a police officer didn't observe the offense. It wasn't possible for her to go to trial. It looked like to me, from what I read, now maybe it's all supposition, and it doesn't matter anyway to the ultimate decision. I was just curious. Sure. But it seemed to me from reading what I read, she did not have, this was a case where somebody on the highway reports this kid changing lanes wrong, the police make a stop, they didn't see it, that person who reported him could have been from another state for all we know, doesn't show up at the trial. Absolutely. She basically got no choice but to dismiss it unless he pleads guilty. She doesn't have her incident witness there. And certainly that may come out in the factual proceedings in this case, but Dennis Tacticos can't testify to one of those instances because from his perspective it's all hearsay. It's not anything that he has personal knowledge of. So your Honor had asked earlier, would this be a different dynamic if the son had actually made these assertions, and certainly I guess I would not be able to argue that it was done with actual malice if the son did it because the son would have had a basis in fact to know and assert what occurred. But in this instance I do think that it's reckless disregard for Dennis Tacticos to make these statements about untruths by a lawyer, which essentially attacks her integrity to tell the truth, and that that would be actual malice. If we had a publisher who had third-hand knowledge of an incident where a police officer was alleged to have helped someone escape prison, and that reporter reported that without having any reliable source, I believe that the case law would hold that reporter liable for actual malice for the reporter's failure to investigate the sources of the knowledge that that individual was imparting and making statements about. Finally, the defendant will argue in this case that there is some ability for the defendant to assert the innocent construction rule in this case, and I would assert that with respect to a couple of things that are stated in that letter to the editor, there is no innocent construction if you consider the circumstances that surround the publication that occurred in the newspaper because he essentially alleges that the state's attorney lied to his son in order to gain advantage at a court proceeding. Counsel, you filed a response to the defendant's motion to dismiss. Yes. And with regard to count one's standard per se, you cite what we've been talking about here, Howell v. Blachar's case, and talking about how, quoting here, specifically the public official must show that the defendant published a statement that acknowledged it was false with reckless disregard whether it was false or not. However, this pleading standard is inapplicable in the present matter. Now, I just went through your response again, and I see no further reference to claims that you pled the equivalent of what applies to the knowledge that it was false with reckless disregard whether it was false or not. Any argument in your response anywhere that you just made to us now? Well, I believe so, Judge. And while counsel is arguing, I can look again. But I think it was in my motion to reconsider, and then I think I also did a reply. But during the oral argument, when we appeared before Judge Little, we talked at length about the public official and whether or not Ms. Vickers-Duncan was a public official. And I know during that argument that we argued, even alternatively, that if she isn't or if she is, I still could make a proper pleading because of his relationship to her not being a litigant in this case. So in your 15-page or whatever it was, 14-page motion in response, you failed to make any reference to this alternative argument? I may have, Judge. I don't know that it even came up until we had oral argument about the public official capacity, and I was arguing the false light invasion of privacy. Well, his motion to dismiss dealt extensively with the whole public official question, and your entire response appears to be at the bottom of page 2 saying it doesn't apply. And certainly I argue that, Judge. I do argue that it doesn't apply. Which would suggest that if we were to conclude that it does apply, case is over. So if she's a public official, that's the end of it. I don't recall the argument being alternatively, we plead sufficiently so that even if she's a public official, my complaint contains enough information. Well, I certainly would argue that even if she is the public official, the same facts that I allege, I believe, in count 1 of my complaint was exactly the same as count 2, and I was very specific about the fact that Mr. Tacticos had no personal knowledge. So I do believe that I argued that to Judge Little when we had our initial oral argument on the underlying motion to dismiss, and I know that it came up when we argued our motion to reconsider in front of him because the actual malice standard clearly applied on count 2. But I will look back through those pleadings, Your Honor. Thank you. Great. Thank you, Counsel. Mr. Schwartz. Thank you. And please, according to counsel, I think this situation has really only two things that I would like to address here. The first is obviously the public official matter. Is the what, sir? Pardon? The first is the what? Public official matter. Okay. The case law, I think, when we look at whether it's Coursey or the cases that went before that, I think everyone agrees a police officer is a public official. It doesn't matter whether he's a private or whatever they call the lowest rank officer, patrolman, or he's a lieutenant or captain on the force. They interact with and intersect the public on a daily basis. How much more so than is a prosecutor? A prosecutor, contrary to what counsel has said, has the right to proceed, has the right to continue if they aren't ready to proceed, has the right to dismiss. That impacts the public in every way possible because you can lose money to a fine. You can go to jail if the offense is jailable. And the case law, I think, is very, very clear that that is where we're at on whether or not Ms. Duncan was, in fact, a public official. She interacted in traffic court every day with the public. She had the power, as I said, to proceed, to dismiss the case, and that's exactly what she did. And, Your Honor, you are correct. She dismissed for lack of a witness. That's in the common law record. Now, we get to skates, which this court decided some years ago. It's a criminal case. I know that. The statute I cited is out of the criminal code. But it is a legislative definition of what a public official is. Was the legislature intending that to apply to common law civil cases? Well, I'm certainly sure they didn't even think about that. But it defined what a public official was, and an assistant state's attorney is in the list, as are assistant AGs, as are police officers. They even mention case workers who are employed by, let's say, the county to do something or other. So I think the public official issue is without question here. And Judge Little really summed it up badly. Counsel, I have a procedural question to raise. Illinois provides for two different ways to attack pleadings. One is a motion to dismiss under Section 2615, alleging that accepting all the well-pleaded averments in a complaint, it fails to state a cause of action. Another is a motion to dismiss under 2619, which alleges that for purposes of the motion, the defendant is assuming that the cause of action has been stated, but alleges affirmative matter to defeat that cause of action. You filed a 2619 motion in this case. What was the affirmative matter? The affirmative matter is that she was a public official, and as such, they did not properly plead the malice issue. Well, that sounds to me like a failure to plead some necessary element to begin with, as opposed to an affirmative matter defeating an otherwise appropriate complaint. Well, I believe that, one, it was a combined motion, 2615 and 2619. I see what Judge Little ruled, and he discussed at paragraph four the 615 aspect of my motion, which went to great lengths of saying what was wrong almost paragraph by paragraph. And then he went on to discuss the 619 issue and indicated that the complaint was wholly without any allegations of well-pled, which I take were non-conclusory, that counsel had completely missed the malice issue. But to answer my question, it's your position that the argument that the plaintiff is a public official and has to plead actual malice is an affirmative matter for you to raise as opposed to 2619 as opposed to a deficiency in the complaint under 2615? Well, I understand what you're driving at, and I believe it comes under subsection 9 of 2-619, which is that catch-all, but it also comes under 2615 in the sense that if she hasn't pled a proper cause of action, I can have judgment right then and there on the pleadings. It's not just, and I understand Judge Little granted her leave to amend, but she chose to stand on her complaint, and I think she has waived that, and she can't go back now and say I need to re-plead here. So I think we're done. Now, in speaking to those other matters as to whether she properly pled a per se complaint here, we have those two statements that she quotes in her complaint. The first statement was there were witnesses present who were not. You know, standing on its face, I mean, per se, it's got to hit you in the face that you are really calling someone out. That is, it's not, it's just not per se libelous, and I don't believe it's actionable on its face. The second statement that he was fighting a case he simply couldn't win, I mean, that's puffing. That's like we get at the used car lot. That's, you know, pushing one's chest out, and I've got a good case here. You might as well plead guilty to it, and it's innocuous at best. You heard Ms. Wall argue that she argued alternatively at the trial level two things. One, that the plaintiff was not a public official, and the standard didn't apply, the New York Times standard didn't apply in her case. And two, as Wall said, even if she were a public official, that the complaint had sufficiently argued it so as to back, so as to render the complaint adequate to defeat your motion to dismiss. Is she correct that that was argued at the trial level in that fashion? I'm not going to stand here and say no, she didn't. It's been many, many months. My best recall of what we argued to the judge, what I argued, was paragraphs 14, 19, 20, 21, 22, 26, 27, all are conclusions of the pleader. There's not one fact in them except what Ms. Wall has alleged in her complaint. As to paragraphs 23 and 24, there's just absolutely no such language anywhere in those two statements attributed to Mr. Tacticos. It just isn't there. And so what we're left with was, first of all, there were witnesses present who weren't. It turned out to be true. She dismissed for lack of a witness. The second, in its best light in favor of the plaintiff, it's innocuous. So what? I mean, you're fighting a case you cannot win? Come on. I mean, you've got a baseball, you'll never hit me. There's just no way that that amounts to defamation per se. I can't even figure out how it can be defamation per quad. You would have to lay layer upon layer of innuendo and all the other things to even get to that point. And then the third statement about bullying was clearly stated with what I perceive to be the bullying of an 18-year-old. That's his opinion. And we're on an opinion page in the pantograph. Everybody knows people are airing their gripes there. And I still go back to what Judge Little says. The performance of the role of the prosecutor is something that is very, very important in our society, and it carries both the good and the not-so-good with it. Judge Little said it can even have the potential for abuse. And we cannot muzzle the public by the threat of prosecution under the libel laws. I listed so many things in my motion to dismiss. We had the innocent construction. We had the public opinion. We had just the plain old good old First Amendment right to say what you think. None of this says there's not one fact. And, in fact, counsel said in her opening argument, I didn't amend because I didn't have any more facts than what I already had alleged. I mean, what we've got in that complaint, that's it. By admission of counsel, there is no more. And we would have to strain very hard to make defamatory those two statements. It would take a context far greater than that article to be able to see something past just a disgruntled parent. And one other thing I'd like to point out is every time we pick up the newspaper and we read something by a news reporter, that reporter generally wasn't present. That reporter just is taking what was told to them. They are to fact check, yes. And behind the scenes of all this, there was a number of e-mails going back and forth between Mr. Tacticos, Sheila Duncan, and Bill Yoder, the state's attorney. And they were dialoguing back and forth. And those facts were tossed back and forth with each other. And when it got to the point of the opinion page on the panic graph, Mr. Tacticos had done his fact checking with a party who was personally present. And to sit here and say there's a difference now because he wasn't the defendant in the traffic case, he has no right to comment. And I just find that very chilling. That is not what the trial judge said. He said there's just not enough here. And I'm going to ask the court to please look at the Moriarty case. That second statement, there were nine statements in the case attributed to the reporter. Eight of the nine were found to be opinion. One was found to be sufficient to at least get to the fact-finding stage. But even that, if you read statement number two in Moriarty, it is way beyond anything that was said here. They're not even close. Because that statement number two clearly implied that the psychologist was going to do whatever the dad had paid her to do. In other words, she was a hired gun. And that is probably sufficient pleading for per se. Here, none of that is apparent. And I would respectfully ask this court to affirm the trial court's decision. Thank you, counsel. Ms. Watt? Here you go. Your Honor, with respect to your question, I did have occasion to look back at the pleadings and also at Judge Little's order that he entered. And he was very specific about the fact that the plaintiff's complaint with respect to actual malice wasn't sufficient. And we argued that, even in paragraph six and seven of his order. He basically says, okay, if you want to assume that she is a public official, then we go to the actual malice standard. And he says the facts don't rise to that level or that, you know, they... You never argue that they do. I believe I... You never argue that the facts... You never, in your, and I checked your petition to reconsider... Right. You never argue, alternatively, Judge, assuming that you're right that she's a public official, we argued facts here to meet that standard. That statement appears nowhere. It certainly doesn't appear in my motion to reconsider. Or in the motion in response. Right. The motion in response to your motion to dismiss. Right. But with respect to what he actually found, Your Honor, after we had oral argument, he did say that the pleadings as a whole do not achieve actual malice. And we talked about, with respect specifically to my paragraph 12, 13... Counsel, I'm troubled by the idea that you're asking us to reverse the trial court based on an argument you never presented. If you had argued to the court in the alternative... By the way, Judge, even if Mr. Scholz is right that we disagree, but alternatively, even if you think he's right that my client has to be public official, we have alleged sufficiently to meet those standards, and here's where. That argument never appeared. You're asking us to reverse the trial, Judge, based on an argument you never made. And I would assert, Your Honor, that I did at the pleading stage, that I argued that you could make those reasonable inferences, that with respect to count two, the false light invasion of privacy, Judge Little clearly knew that with respect to that count, it clearly was the actual malice standard. So, if it wasn't stated specifically in my responses to counsel's motion, certainly the thrust of the argument at that time was the public official capacity. But I believe that I did argue to the judge about the actual malice. What the problem is, is that we can't check it because you did not include a transcript from the October 12th hearing. Right. We didn't have that in the record. And that hearing was where you would have made that argument. But I think this court can look at the well-pled facts that are in my complaint and can, on the basis of any of the facts well-pled, find, in particular based on count two, that we did allege the actual malice and that we did talk about that with respect to those particular things. So, I recognize there's no transcript, but that argument was set forth in our complaint and I believe argued before the trial court. And I think this court can make a determination based on the allegations in the complaint. Because of the stage that we were at at the time that this action was argued, it's a de novo review by this court. Certainly, if it were a situation where the court had to look at an abuse of discretion standard, that might be different. But here, this is actually a de novo review based on the pleadings. And so, I'm not certain that I'm marshaled by what I actually put in writing if the allegations of the complaint meet the actual malice standard. And I believe in this case that we did allege sufficient facts to do that. On that basis, I would ask that the court reverse the decision. Thank you, counsel. We'll take this matter under advisement and be in recess until the next case.